## APPEAL OF LOUIS TITUS.

Docket No. 85.    Submitted June 29, 1925.    Decided September 9, 1925.

*Louis Titus*, pro se.
*Ward Loveless, Esq.*, for the Commissioner.

### Before GRAUPNER and PHILLIPS.

The taxpayer appeals from the determination of a deficiency of $2,736.10 in income tax for 1921, arising from the disallowance of an item of $12,500 claimed by the taxpayer to have been paid during the year 1921 for services rendered.

FINDINGS OF FACT.

1. On many different occasions for a period of 20 years prior to 1921 the taxpayer had employed one Robert McDuffie in various capacities. He was first employed by the taxpayer in real estate subdivisions near San Francisco, having charge of the mechanical work of laying out and grading streets, constructing sewers, sidewalks, and pavements, and work of such character. Later he was placed in charge of a 5,000-acre ranch upon which the taxpayer was installing an extensive irrigation system, having complete charge of the ranch and the installation of the irrigation plant. Later he was employed, first as assistant manager and then as manager, in the oil fields. He spent several years in each of these employments and was considered by the taxpayer to be a man of very good judgment and expert knowledge in these matters.

2. In 1920 McDuffie was no longer in the employ of the taxpayer but had gone into business for himself.

3. During 1920, or prior thereto, the East Side Investment Co., of which the taxpayer was president and in which he was largely interested, acquired a large farm near Merced, Calif. In 1920 negotiations were entered into with McDuffie with a view to securing his services in managing the farm. Such services required only a part of his time and the East Side Investment Co. offered to pay a salary of $500 per month. McDuffie was unwilling to work for such a salary and the taxpayer, believing that he could make use of McDuffie's services on other ventures in which he was interested, arranged with McDuffie that McDuffie should take over the management of the farm, that the East Side Investment Co. should pay him $500 per month, and that the taxpayer should pay him additional sums for services which McDuffie should render for the taxpayer in his individual projects. The exact amount to be paid by the taxpayer was not agreed upon, the relationship between the two being one of mutual trust and confidence. This arrangement continued until the middle of 1921, when the plans with reference to the farm owned by the East Side Investment Co. were changed and there was no longer any need for his services there. In the meantime, at the request of the taxpayer, McDuffie had examined a ranch of 11,000 acres offered to the taxpayer for purchase at $60 an acre and had advised against such purchase, pointing out the difficulties in irrigating the property and in leveling it for irrigation, a large part of it being rolling land. He also went over the Santa Fe Springs and the Signal Hill oil fields, which at that time were in their initial development, and reported orally his opinion

upon their desirability as investments. These services were all performed during the year 1921.

4. During the year 1921 McDuffie and the taxpayer agreed upon $12,500 as the amount of compensation to be paid McDuffie under the original arrangements made between them at the time McDuffie entered the employ of the East Side Investment Co. This amount was paid to McDuffie by the taxpayer during 1921, and was in addition to the agreed compensation paid McDuffie by the East Side Investment Co.

### DECISION.

The deficiency determined by the Commissioner is disallowed.

ARUNDELL not participating.